UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LUCIUS LEE RACKARD WILLIAMS,**

   **Plaintiff,**

v.               Case No: 6:18-cv-350-Orl-40GJK

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Lucius Lee Rackard Williams (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Social Security Disability. Doc. Nos. 1 and 22. Claimant alleges an amended disability onset date of November 13, 2013. R. 26. Claimant's eligibility window for Social Security Disability runs until June 20, 2019. R. 26. Claimant argues that the decision should be reversed because of the following: 1) the ALJ erred when he did not consider all Claimant's objective medical testing; 2) the ALJ failed to properly weigh certain medical opinions; and 3) the ALJ's hypothetical question to the Vocational Expert ("VE") did not properly account for limitations in concentration, persistence, and pace. Doc. No. 22 at 13-14, 14-21, 34-38. It is recommended that the ALJ's final decision be **REVERSED.**

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla–i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

I.      **RELEVANT BACKGROUND.**

Claimant testified he was diagnosed with neurosarcoidosis (brain lesions) in 2011 and underwent a craniotomy. R. 31, 32. At the time, Claimant worked as an assistant store manager at a Winn-Dixie. R. 52. He had worked for Winn-Dixie for more than sixteen years. R. 52. After his surgery, Claimant spent approximately six to seven months learning to walk and talk again. R. 31, 55-56. He also had problems with his memory. R. 31, 56. Claimant testified that he returned to work in November 2013, but that he was let go as of November 13, 2013, because, while he was medically cleared to work, he wasn't making "clear decisions." R. 33, 54.

At the hearing, Claimant explained that his speech and walking had improved significantly, but that he continued to work to improve both by going to the gym three times a week for "rehab" and that he practiced his speech. R. 31-32, 56, 60. He testified he tires easily, still has memory problems, and has problems with his right side and, in particular, with his right hand. R. 31, 56-

57. Claimant testified he naps twice daily to combat fatigue and he takes medication to help him sleep at night and for depression.  R. 59.  Claimant's fiancé testified regarding Claimant's problems, including fatigue, speech that gets worse over the course of the day, and issues with understanding and remembering instructions.  R. 70-71, 73-74.

Claimant's treating physician, Dr. Isa, noted hemiplegia affecting Claimant's dominant (right) side, mild cognitive impairment, and depressive disorder.  R. 33.  Dr. Isa also observed 4/5 power on the right finger abductors and decreased arm roll, decreased FFM on the right, and a very subtle foot drop with walking.  R. 33.  Dr. Chowdhardy, another treating physician, noted Claimant's fatigue and lack of concentration and memory.  R. 33.  A nurse practitioner also noted right-sided weakness.  R. 33.  Both treating physicians observed a stable disease state related to the neurosarcoidosis with no further deterioration of Claimant's brain based on regularly conducted MRIs.  R. 33-34.

On April 16, 2014, a non-examining state agency psychologist, John Thibodeau, found that Claimant had moderate difficulties with concentration, persistence, and pace but that his impairments were not severe enough to preclude simple work.  R. 87.  On May 13, 2014, another non-examining state agency expert, Nancy Hinkelday, Ph.D., also indicated that Claimant had moderate difficulties with concentration, persistence and pace but was not precluded from simple work.  R. 101-106.

On November 13, 2015, a neuropsychologist, Dr. Olafsson, evaluated Claimant at the suggestion of his treating specialist.  R. 34, 349-56.  Dr. Olafsson noted "attention and concentration performance was variable with impaired performances on tests of sustained attention."  R. 34.  "Some deficits were observed with sustained attention, problem solving and reasoning, high verbal abstraction, accessing the verbal lexicon, visual planning ability, and

hindering impulsive responses." R. 34.  Dr. Olafsson also noted deficits in executive functioning and that "the claimant likely has difficulty with tasks requiring sustained attention, is likely to experience difficulty when confronted with new and novel problems of work and everyday life, and lacks adequate cognitive skills to resolve such problems." R. 34.  Claimant's mood difficulties were noted to be exacerbated by the inattention and impulsivity Claimant displayed.  R. 34.

Dr. Olafsson diagnosed Claimant with major neurocognitive disorder due to history of encephalitis requiring craniotomy and mood disorder.  R. 356.  Dr. Olafsson opined that Claimant "is likely to experience difficulty with task[s] requiring sustained attention and he is likely to be easily distracted when engaged in tasks." R. 355.  Claimant is "likely to experience difficulty when confronted with new and novel problems of work and everyday life, and appears to lack adequate cognitive skills to resolve such problems." R. 356.  Dr. Olafsson then noted that Claimant's "ability to maintain sustained attention in a working environment appears quite limited. His ability to maintain employment would also likely be impacted by dysarthric speech and expressive language difficulty." R. 355.

The ALJ found that Claimant had the following severe impairments:  neurosarcoidosis, organic mental disorder, and affective disorder.  R. 28.  The ALJ ultimately concluded that Claimant retained the following residual functional capacity ("RFC"):

> claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to frequent handling and fingering with the right upper extremity.  The claimant can occasionally climb ramps and stairs, but he can never climb ladders, ropes or scaffolds.  He can occasionally balance, stoop, kneel, crouch and crawl. Moreover, the claimant is limited to performing simple, routine tasks and making simple work-related decisions, and he is limited to tolerating few changes in a routine work setting.

R. 31.  The ALJ assigned no weight to the treating physicians' observations and diagnoses.  The

ALJ assigned "some weight" to Dr. Olafsson's opinion regarding some of Claimant's limitations R. 35, 36. The ALJ found that:

> Some weight is given to Dr. Olafsson's opinion as it was consistent with his extensive testing showing mild neurocognitive disorder. The undersigned gives Dr. Olafsson's opinion that the claimant is limited to simple tasks, is able to make simple decisions, and is limited in changes in the workplace are adopted herein as these opinions are not inconsistent with the medical evidence and the claimant's alleged activities of daily living.

R. 36. However, the ALJ gave "little weight" to Dr. Olafsson's opinion with respect to Claimant's ability to maintain sustained attention in the workplace. R. 36. The ALJ explained that this opinion "is not stated in vocational terms and is not fully explained" and that the opinion was "not consistent with other medical opinions of record." R. 36. However, the ALJ acknowledged that he was persuaded by Dr. Olafsson's testing and opinions in formulating Claimant's RFC. R. 36. The ALJ then gave significant weight to the non-examining state agency psychologists' opinions that Claimant was not precluded from simple work. R. 35.

Claimant makes the following arguments: 1) the ALJ erred when he did not consider all Claimant's objective medical evidence; 2) the ALJ failed to properly weigh certain medical opinions, including the opinions of his treating physicians and an examining psychologist; and 3) the ALJ's hypothetical question to the Vocational Expert ("VE") did not properly account for Claimant's limitations in concentration, persistence, and pace. Doc. No. 22 at 13-14, 14-21, 34-38. More specifically, Claimant argues that the ALJ misrepresented Dr. Olafsson's opinion. Doc. No. 22 at 21-22. Claimant also argues that the ALJ gave improper weight to Dr. Olafsson's opinion. Doc. No. 22 at 19-21. The Commissioner argues that the ALJ's decision to assign little weight to Dr. Olafsson's opinion regarding Claimant's limitation related to sustained attention was clearly articulated and supported by the record. Doc. No. 22 at 32. The Commissioner suggests

that the ALJ could not discern whether Dr. Olafsson's opinion regarding vocational limitations was related to past work or any work, so the ALJ properly assigned little weight. Doc. No. 22 at 32. The Commissioner does not address Claimant's argument related to the ALJ's mischaracterization of Dr. Olafsson's opinion. Claimant also argues that the ALJ failed to consider a 2016 MRI, and that the ALJ failed to weigh the opinions of his treating physicians. The Commissioner argues that the 2016 MRI, as well as the other objective medical evidence, was considered. Doc. No. 22 at 27-28. The Commissioner also argues that the treating physicians offered no opinions that needed to be weighed, but that even if they did, the failure to do so was harmless error. Doc. No. 22 at 29-31.

Finally, Claimant argues that the ALJ failed to properly account for his limitations related to concentration, persistence, and pace ("CPP"). Doc. No. 22 at 34-35. Specifically, Claimant focuses on a failure to account for problems Claimant would have with pace based on his attention deficits. Doc. No. 22 at 35, 38. The Commissioner argues that the ALJ's hypothetical properly included all limitations in light of the medical evidence of record that Claimant could perform non-complex tasks despite moderate difficulties in maintaining concentration, persistence and pace. Doc. No. 22 at 40.

While the Claimant raises several arguments regarding the ALJ's treatment of the record evidence, the dispositive arguments raised by Claimant relate to the ALJ's treatment of the only examining psychologist's opinion, which was provided by Dr. Olafsson. Claimant's arguments with respect to the ALJ's treatment of Dr. Olafsson's opinion are well-taken and necessitate reversal and remand for further proceedings.

**II.     ANALYSIS.**

    A.     <u>The ALJ's mischaracterization of Dr. Olafsson's opinion</u>.

The ALJ materially misstates Dr. Olafsson's medical opinion. R. 36. In his decision, the ALJ adopted Dr. Olafsson's "opinion" that "claimant is limited to simple tasks, is able to make simple decisions, and is limited in changes to the workplace." R. 36. However, Dr. Olafsson never stated that Claimant "is limited to simple tasks, is able to make simple decisions, and is limited in changes in the workplace." R. 36. Rather, Dr. Olafsson diagnosed Claimant with major neurocognitive disorder and found that::

> Mr. Rackard-Williams is likely to experience difficulty with task[s] requiring sustained attention and he is likely to be easily distracted when engaged in tasks. He is likely to experience difficulty when confronted with new and novel problems of work and everyday life, and appears to lack adequate cognitive skills to resolve such problems. Mood difficulties are likely exacerbated by the impact of inattention and impulsivity upon social interactions and daily functioning.
> Mr. Rackard-Williams' ability to maintain sustained attention in a working environment appears quite limited. His ability to maintain employment would also likely be impacted by dysarthric speech and expressive language difficulty.
> Mr. Rackard-Williams' judgment appears intact; however, his self-awareness of the extent of deficits appears somewhat limited, and again, as mentioned, he was a poor historian with regard to the history of difficulties. As a result, his ability to make responsible work-related decisions and decisions pertaining to healthcare and finances may be somewhat limited, and increased family involvement is recommended.

R. 355. Instead of relying on Dr. Olafsson's actual opinion, the ALJ relied on his own version of Dr. Olafsson's opinion. R. 36. The ALJ's interpretation of Dr. Olafsson's opinion is not supported by the record. An ALJ may not arbitrarily substitute his own opinion for the diagnosis of a medical professional. *See Marbury v. Sullivan*, 957 F.2d 837, 841 (11th Cir. 1992); *McLeod v. Colvin*, 2014 WL 4792242, at *10 (N.D. Ala. 2014) (court expressed concern where ALJ relied on only

7

examining mental health professional's diagnosis and tests but totally disregarded his professional judgment regarding the limitations caused by those impairments).

Central to the determination of a claimant's ability to work is what that person can do despite his limitations. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). This requires an ALJ to consider and weigh the opinions of record from treating, examining, and non-examining medical professionals. *Id.* Here, the ALJ ostensibly adopted Dr. Olafsson's opinion that Claimant could do simple routine tasks but the ALJ does not indicate where Dr. Olafsson provided such an opinion. R. 36. This Court's independent review shows no support for the ALJ's interpretation of what Dr. Olafsson opined. Thus, the ALJ's material misstatement of Dr. Olafsson's opinion necessitates reversal in this case because the ALJ's ultimate conclusion about Claimant's limitations, as stated in his RFC, is based on a mischaracterized medical opinion. *See Quanstrom v. Comm'r of Soc. Sec.*, No. 6:15-cv-990, 2016 U.S. Dist. LEXIS 92188, at *22-23 (M.D. Fla. Jun. 23, 2016) (nature and scope of ALJ's mischaracterizations of an opinion led to error that required reversal where ALJ's decision was not supported by substantial evidence); *White v. Comm'r of Soc. Sec.*, 6:09-cv-1208, 2010 U.S. Dist. LEXIS 90834, at *41-43 (M.D. Fla. Aug. 3, 2010) (ALJ's misstatement of fact regarding physician's opinion substantially affected the ALJ ultimate conclusion necessitating reversal).

B.   <u>The ALJ's failure to properly weigh Dr. Olafsson's opinion.</u>

The ALJ gave only some weight to Dr. Olafsson's opinion and chose to give significant weight to the non-examining state agency psychologists' opinions. R. 35-26. "'Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists.'" *Goldwire v. Comm'r of Soc. Sec.*, No. 6:16-cv-1576, 2018 U.S. Dist. LEXIS

33423, at *11-12 (quoting *Davis v. Barnhart*, 186 F. App'x 965, 967 (11th Cir. 2006)). [1]  Thus, an examining physician's opinion is entitled to more weight than the opinion of a non-examining physician.  *Creasy v. Colvin*, No. 3:12-cv-915, 2013 U.S. Dist. LEXIS 115572, at *10 (M.D. Fla. Aug. 15, 2013) (citing 20 C.F.R. § 404.1527(c)(1)); *see Lacina v. Comm'r of Soc. Sec.*, 606 F. App'x 520, 526 n. 6 (11th Cir. 2015) (the opinion of an examining medical professional is generally entitled to greater weight than the opinion of a non-examining medical professional). Further, "[m]edical opinions supported by data such as testing are also given greater deference." *King v. Barnhart*, 320 F. Supp. 2d 1227, 1232 (N.D. Ala. 2004).

"The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (citing *Spencer on Behalf of Spencer v. Heckler,* 765 F.2d 1090 (11th Cir. 1985)).  "[L]ittle weight is accorded to non-examining physicians where their opinions contradict that of an examining physician."  *Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).  As a neuropsychologist, Dr. Olafsson's opinion is especially relevant in assessing the vocational impact of Claimant's mental impairments.  *See Jiles v. Barnhart*, 2006 WL 4402937, at *3 (N.D. Ala. Sept. 11, 2006) (citing 20 C.F.R. § 404.1527(d)(5)).  These sorts of opinions are crucial in mental impairment cases because ALJs are not experts in the field of mental health.  *Id.* at *4.  In fact, the ALJ has the discretion to seek a consultative examining opinion when a mental impairment is at issue if the record is incomplete. *See Yamin v. Comm'r Soc. Sec.*, 07-cv-1574, 2009 WL 799457, at *13 (M.D. Fla. Mar. 24, 2009); *see also McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988); *McLeod*, 2014 WL 4792242, at

---

[1] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

\*9.

The ALJ noted that Dr. Olafsson conducted a variety of tests including Wechsler Adult Intelligence Seale-IV, Wechsler Memory Scale-IV, Wisconsin Card Sort Test, Delis Kaplan Test of Executive Functioning System (Trails 2 & 4), Phonemic Fluency-FAS, Color-Word Interference-Inhibition), Test of Proverbs, Clock Drawing, Test of Variables of Attention (TOVA), Grip Strength, Grooved Pegboard, Boston Naming Test, Wide Range Achievement Test, Third Edition (WRAT-H Reading and Spelling subtests), Rey-Osterrich Copy, Beck Depression and Anxiety Inventories, and the Mini-Mental State Exam (MMSE). R. 34.

Dr. Olafsson diagnosed Claimant with major neurocognitive disorder due to history of encephalitis requiring craniotomy and mood disorder and found his testing supported mild neurocognitive issues. R. 355-56. Dr. Olafsson opined that Claimant "is likely to experience difficulty with task[s] requiring sustained attention and he is likely to be easily distracted when engaged in tasks." R. 355. Claimant is "likely to experience difficulty when confronted with new and novel problems of work and everyday life, and appears to lack adequate cognitive skills to resolve such problems." R. 356. Dr. Olafsson then noted that Claimant's "ability to maintain sustained attention in a working environment appears quite limited. His ability to maintain employment would also likely be impacted by dysarthric speech and expressive language difficulty." R. 355. The ALJ noted that "consistent with claimant's allegations and his wife's reports, attention and concentration performance was variable with impaired performance on tests of sustained attention." R. 34.

The ALJ improperly weighed the non-examining psychologists' opinions more heavily than the opinion of the examining neuropsychologist, Dr. Olafsson. *Shaw*, 392 F. App'x at 686-87. Dr. Olafsson not only examined Claimant, but performed extensive testing. Conversely, the

non-examining psychologists never examined Claimant, never tested his mental abilities, and did not review the results of any such testing. Dr. Olafsson's examination and diagnosis also occurred more than a year after each of the non-examining psychologists provided their opinions.

Dr. Olafsson opined Claimant would have difficulty performing "tasks" requiring "sustained attention." R. 355. Limiting Claimant's RFC to simple tasks does not necessarily address the attention necessary to perform those tasks. On the facts presented, to discount Dr. Olafsson's detailed assessment of Claimant's work limitations in favor of the non-examining psychologists' opinions was error. *See Barrios v. Colvin*, 2016 WL 3964815, at *5 (S.D. Fla. Mar. 18, 2016) (the Eleventh Circuit has consistently held that an ALJ's mistake regarding weight constitutes prejudicial error and cannot be harmless).

C.   The ALJ's failure to develop the record.

Finally, despite otherwise adopting and incorporating Dr. Olafsson's test results, the ALJ gave Dr. Olafsson's opinion that Claimant's ability to maintain sustained attention in a work environment was quite limited little weight because it was "not stated in vocational terms and is not fully explained." R. 36.

The ALJ has a basic obligation to develop a full and fair record. *Sims v. Apfel*, 530 U.S. 103, 111 (2000). "The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Reed v. Astrue*, 901 F. Supp. 2d 1331, 1338 (S.D. Ala. 2012) (citing *Strawder v. Astrue*, 2011 U.S. Dist. LEXIS 122843, at *20 (N.D. Fla. Aug. 8, 2011)); *Perez v. Colvin*, 214 F. Supp. 3d 1200, 1211-12 (N.D. Ala. 2016) ("in the case of ambiguity, the ALJ has a responsibility to expand the record in order to clarify the ambiguity"). "[T]he ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *McCloud v. Barnhart*, 166 F. App'x 410, 417 (11th

Cir. 2006) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, faced with perceived ambiguity or incompleteness in Dr. Olfasson's opinion regarding Claimant's quite limited ability to "maintain sustained attention in a working environment" the ALJ failed to seek clarification from Dr. Olafsson or otherwise resolve the ambiguity.[2] Instead, the ALJ gave significant weight to the opinions of two non-examining psychologists about Claimant's vocational limitations rather than clarify a conflicting limitation provided by the only examining neuropsychologist.

Given that Dr. Olafsson first opined that Claimant would likely experience difficulty with *tasks* requiring sustained attention, and be easily distracted when engaged in *tasks*, before surmising that Claimant's ability to maintain sustained attention in a working environment would be "quite limited," the ALJ had an obligation to clarify how Claimant's ability to work would be impacted if the ALJ did not understand the import of the inability to sustain attention while completing tasks as applied to the work environment. The Commissioner's argument that the ALJ could not determine whether the reference was to past work or future work does not track with the ALJ's reason for assigning the opinion little weight and is an improper *post hoc* rationalization of the ALJ's finding.[3] Further, it still does not relieve the ALJ of resolving the matter of what the opinion meant from a vocational perspective if the ALJ felt the opinion was unclear.

---

[2] Upon review of the entirety of Dr. Olafsson's opinion, the Court observes none of the ambiguity in vocational application that the ALJ noted.

[3] The ALJ did not offer this as a basis for his decision to afford this part of the opinion little weight and it cannot be properly considered as a *post hoc* reason to support a non-existent finding regarding medical necessity. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a post hoc rationale" that might support the ALJ's conclusion); *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco, Inc.*, 417 U.S. 380, 397 (1974)). Furthermore, Dr. Olafsson's opinion was offered two years after Claimant's employment with Winn-Dixie was terminated and it contains no clear language limiting the opinion to his prior employment. R. 349-56.

      D.      <u>The ALJ's consideration of the objective medical evidence.</u>

The ALJ found that the objective medical evidence corroborated Claimant's testimony regarding the lesions and surgery. R. 32. The ALJ found a study twelve months later showed improvement and was negative for acute infarction or hydrocephalus. R. 32. The ALJ noted that the record tracked improvement through November 2013 when Claimant returned to work full time. R. 32.

The ALJ found that while Claimant's sarcoidosis remained stable, Claimant's treating physician Dr. Isa noted hemiplegia affecting Claimant's dominant side, mild cognitive impairment, and depressive disorder. R. 33. The ALJ recounted that a 2013 MRI study reflected Claimant's condition was stable, with no active inflammation compared to prior studies, no evidence of acute hemorrhage, acute ischemia or enhancing masses, and no acute intracranial abnormalities. R. 33. Similarly, in 2015 the MRI again showed no evidence of acute intracranial pathology; no signs of active intracranial inflammation suggestive of sarcoid, and Dr. Chowdhardy, a treating physician, noted that the study showed "stable disease" and that Claimant was doing well clinically. R. 33.

The ALJ also discussed the May 26, 2016 MRI, noting that "His most recent MRI of the brain from May 26, 2016, did not show deterioration and again showed small focus of a probable burr hole or a focal small craniotomy left frontal parietal junction at the vertex; small focus of signal change left caudate nucleus likely remote small infarct of inflammation." R. 34. The ALJ observed that "In sum, the record, while evidencing consistent treatment and documenting claimant's reports of weakness on the right and fatigue, shows no objective evidence of deterioration and rather shows clearly that the claimant's sarcoidosis is stable." R. 34.

Based on the fact the ALJ's decision expressly considers the objective medical evidence, including the May 2016 MRI, and that it does not conflict with the treatment record of his treating physicians as noted by the ALJ, Claimant's arguments with respect to the consideration of the ALJ's alleged failure to consider the objective medical evidence are not well-taken.

### E. Failure to assign weight to Dr. Isa's and Dr. Chowdhardy's opinions.

The ALJ discussed but did not assign weight to Dr. Isa's or Dr. Chowdhardy's observations and diagnoses. An ALJ is not required to give weight to equivocal medical opinions. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011). Further, if the functional limitations in the unweighed opinion do not exceed those found in the RFC, then any error is harmless. *Venezia v. Comm'r of Soc. Sec.*, No. 6:17-cv-1053, 2018 U.S. Dist. LEXIS 75778, at *22 (M.D. Fla. Apr. 17, 2018) (citing *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005)); *Cintron v. Comm'r of Soc. Sec.*, No. 6:16-cv-1014, 2017 U.S. Dist. LEXIS 130673, at *14 (M.D. Fla. Jul. 27, 2017) (finding that failure to weigh a treating physician's observations and diagnosis was harmless error where the correct application of the regulation would not contradict the ALJ's ultimate finding).

Dr. Isa's and Dr. Chowdhardy's treatment notes do not reflect any statements or judgments about the nature and severity of the Claimant's impairments, other than noting his disease state was stable, save one. R. 315. Dr. Isa observed that "we discussed if Lucius can return to work. Physically he is able to meet the needs to but [from] a cognitive standpoint he <u>may</u> have some struggles meeting demands, which is a concern." (Emphasis added). R. 315. Regardless of whether it was necessary to weigh this general observation, the failure to do so is harmless error because Dr. Isa's opinion is equivocal and Dr. Isa did not indicate Claimant's limitations were more restrictive than those contained in the RFC. *Mason*, 430 F. App'x at 832.

F. <u>Concentration, Persistence, and Pace.</u>

An ALJ must account for limitations of concentration, persistence, and pace in the hypothetical posed to the VE. *Winschel*, 631 F.3d at 1180-81. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Neefe v. Comm'r of Soc. Sec.*, 531 F. App'x 1006, 1007 (11th Cir. 2013) (quoting *Winschel*, 631 F.3d at 1180). "When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Neefe*, 531 F. App'x at 1007 (quoting *Winschel*, 631 F.3d at 1180). "*Winschel* does not . . . stand for the proposition that an ALJ must intone the magic words concentration, persistence, and pace if the ALJ finds based on the PRT that a claimant has limitations in that broad functional area." *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013). Instead, an ALJ may account implicitly for those limitations in other ways when crafting a hypothetical. *Id.*

In this case, the Court cannot determine whether the ALJ's hypothetical was properly crafted when the ALJ mischaracterized and improperly weighed Dr. Olafsson's opinion, and where the ALJ failed to properly develop the record. As such, this part of the ALJ's decision should also be reversed and remanded for consideration after Dr. Olaffson's opinion is properly weighed and considered.

### III. CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

15

      2. The Clerk be directed to enter judgment for Claimant and close the case.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on February 12, 2019.

*[signature]*

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Shea A. Fugate, Esq.
Law Offices of Shea A. Fugate
Post Office Box 940989
Maitland, Florida 32794

Maria Chapa Lopez
United States Attorney
John F. Rudy, III
Assistant United States Attorney
400 N. Tampa St.
Suite 3200
Tampa, Florida 33602

Christopher Harris, Chief Counsel, Region IV
John C. Stoner, Deputy Regional Chief Counsel
Selisa Wright, Acting Branch Chief
Shannon Fishel, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region IV
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303

The Honorable Bruce Landrum
U.S. Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Dr.
Suite 300
Orlando, Florida 32817-9801